UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

NO. 09-80409-CIV-MARRA/JOHNSON

ERIC RUTENBERG,

    Plaintiff,

v.

BOYNTON CAROLINA ALE HOUSE, LLC,
a Florida Limited Liability Company,
d/b/a CAROLINA ALE HOUSE,

    Defendant.
_____/

## ORDER AND OPINION

THIS CAUSE came before the Court on Defendant Boynton Carolina Ale House, LLC, a Florida Limited Liability Company, d/b/a Carolina Ale House's ("Defendant" or "Carolina Ale House") Motion for Summary Judgment (DE 27), filed October 30, 2009, and Plaintiff Eric Rutenberg's ("Plaintiff" or "Rutenberg") Motion for Summary Judgment (DE 31), filed October 30, 2009. The motions are fully briefed and ripe for review. The Court has reviewed the motions, responses, and replies, the entire file in this case, and is otherwise duly advised in the premises.

**Background**

Plaintiff, a former employee of Defendant, brought a claim against Defendant for recovery of overtime compensation under the Fair Labor Standards Act, 29 U.S.C. § 216(b) ("FLSA") (See Compl., DE 1). Plaintiff alleges that Defendant knowingly and willfully failed to pay him at time and one-half of his regular rate of pay for all hours worked in excess of forty (40)

1

per week. Compl. ¶ 17. However, Defendant maintains that Plaintiff's overtime compensation claim fails because Plaintiff was employed in a bona fide executive capacity under 29 U.S.C. § 213(a)(1). If so, Plaintiff was exempt from coverage for unpaid overtime compensation under the FLSA. See DE's 27-29.

## STANDARD OF REVIEW

Summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of showing the Court, by reference to the record, that there are no genuine issues of material fact that should be decided at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the non-moving party bears the burden of proof on an issue, the moving party may discharge its burden by showing that the materials on file demonstrate that the party bearing the burden of proof at trial will not be able to meet its burden. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

When a moving party has discharged its burden, the nonmoving party must "go beyond the pleadings," and, by its own affidavits or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing there is a genuine issue for trial. Celotex, 477 U.S. at 324. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). When deciding whether summary judgment is appropriate, the Court must view the evidence and all reasonable factual inferences therefrom in

2

the light most favorable to the party opposing the motion. Witter v. Delta Air Lines, Inc., 138 F.3d 1366, 1369 (citations and quotations omitted).

This Court may not decide a genuine factual dispute at the summary judgment stage. Fernandez v. Bankers Nat'l Life Ins. Co., 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Hoffman v. Allied Corp., 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir.1989).

## DISCUSSION

The central dispute in this case is whether Plaintiff, an "assistant kitchen manager," was guaranteed overtime wages when he worked more than forty hours per week or whether he was exempted from FLSA's coverage under the "executive" exemption. 29 U.S.C. § 213(a)(1). Department of Labor regulations define an employee as "employed in a bona fide executive capacity" when all of the following are met:

    (1) The employee is compensated on a "salary basis" of at least $455 per week;
    (2) The employee's "primary duty is management of the enterprise in which the employee is employed";
    (3) The employee regularly directs the work of two or more other employees; and
    (4) The employee has the authority to hire and fire employees or the employee's recommendations with respect to hiring and firing are given "particular weight."

29 C.F.R. § 541.100(a). Plaintiff does not dispute that he was paid more than $455 per week under the "salary basis" test. ((DE 31 at 16 n.6; DE 39-1 at 1). Thus, the Court need only

3

address the remaining three factors.

**Management as Primary Duty**

The Department of Labor regulations[1] provide a lengthy list of activities that generally connote "management":

> activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102. Specifically, the regulations direct the Court to consider (1) the "relative importance" of the employees exempt and non-exempt duties, (2) the frequency with which employees exercise discretion; (3) the employee's freedom from direct supervision, and (4) the relationship of the employee's salary to the wages paid to non-exempt employees. Id.

**The "Relative Importance" of Plaintiff's Exempt and Non-exempt Duties**

Plaintiff maintains that his primary duties were preparation and cooking, not management. (Rutenberg Dep., DE 31-3, at 91-97). Nevertheless, Plaintiff concedes that he did engage in some "management" duties. (See, e.g., Pl. Mot. 17-18.) The Court must consider

---

[1] The FLSA explicitly authorizes the Department of Labor to issue regulations defining the executive and administrative exemptions to the statute. See 29 U.S.C. § 213(a). The Court must give such regulations "controlling weight" unless they are "arbitrary, capricious, or manifestly contrary to the statute." Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844 (1984).

whether such duties were Plaintiff's "primary duties." The regulations define "primary duty" as the "principal, main, major or most important duty that the employee performs," which is based on an examination of the totality of the circumstances in a particular case. 29 C.F.R. § 541.700(a).

Of course, merely having the title "manager" is not talismanic, and the Court must still engage in a fact-specific inquiry to determine whether Plaintiff's most critical duties to the enterprise were his exempt managerial duties. Rodriguez v. Farm Stores Grocery, Inc., 518 F.3d 1259, 1264 (11th Cir. 2008) ("When it comes to deciding whether an employee is an executive within the meaning of the FLSA, the answer is in the details."). Rather, the Court must measure the "significance of the managerial tasks to the success of the facility." Haines v. Southern Retailers, Inc., 939 F. Supp. 441, 450 (E.D. Va. 1996). See, e.g., Diaz v. Team Oney, Inc., 291 Fed. Appx. 947, 949 (11th Cir. 2008) (although plaintiff spent majority of time servicing customers, his managerial duties "were significantly more important to the operation of the restaurant than his non-managerial tasks."). The person "in charge" of a store is generally considered to have management as a primary duty, even if that person spends more aggregate time performing non-exempt duties and "makes few significant decisions." Donovan v. Burger King Corp., 672 F.2d 221, 227 (1st Cir. 1982); see also Horne v. Crown Central Petroleum, Inc., 775 F. Supp. 189, 191 (D.S.C. 1991) ("The [employees] merely rowed the boat; [the manager] charted and steered its course.").

Plaintiff emphasizes that he spent "eighty-five to ninety percent of his time on the line as a cook" to argue that his primary duties were non-managerial. See Rutenberg Dep. at 187. Nonetheless, the amount of time an employee spends on managerial work is not dispositive of

5

whether he or she is an exempt employee. § 541.700(b). While it is true that "[w]hether an employee is exempt is determined by the employee's actual work activities, not by the employer's characterization of those activities," Cooke v. General Dynamics Corp., 993 F. Supp. 56, 61 (D. Conn. 1997), an employee's characterization of his or her responsibilities should not be dispositive when that characterization conflicts with other evidence. Courts have held that managers of retail establishments are exempt, "notwithstanding the fact that they spent the majority of their time performing non-exempt tasks." Poseley v. Eckerd Corp., 433 F. Supp. 2d 1287, 1302-03 (S.D. Fla. 2006) (collecting cases).

Plaintiff states that he never set or adjusted any employees' rates of pay. See Rutenberg Dep. at 185 (Q: Did you ever set or adjust the pay rates for any of the employees in the kitchen? A: No.); Leogue Dep., DE 31-5 at 20 (Q: Now, back to Mr. Rutenberg's duties. Did he ever set or adjust anybody's rate of pay? A: I don't have knowledge of that.). However, Defendant argues, Plaintiff did have the authority to evaluate a "back of the house" employee's productivity and efficiency for the purposes of recommending increases in pay. See Rutenberg Dep. at 144 (Q: Was that one of your duties and responsibilities, to monitor the staff that was on closing shift, because Ira's not there, obviously, to see how they were performing? A: Yeah...).

Plaintiff also presents evidence that he never disciplined any employees during his approximate year of employment. See Marouf Dep., DE 31-6 at 34 (Q: Did he ever discipline any employees? A: I don't know.); Leogue Dep. at 22 (Q: Did he ever discipline any employees? A: I don't have any knowledge of him taking disciplinary action on anybody.). However, Plaintiff did admit in his deposition that he may have written up an employee. See Rutenberg Dep. At 194-95 (Q: So did you ever write up or discipline any kitchen employee? A: I think I

might have wrote one up, but it was given to Ira and I don't even know if it ever went in his file.)

Plaintiff states that he did not control the labor budget because the kitchen manager, Ira Eady, prepared the weekly schedules. See Rutenberg Dep. at 182-83. However, Defendant presented testimony that controlling the labor budget is "what he should have been doing." See Leogue Dep. at 21-22. ("... he would be responsible for maintaining the number of hours worked based on projected sales. So, as the assistant kitchen manager, if we were not going to hit the projected sales, it would be his responsibility to make the proper labor cuts in his kitchen on his shifts.").

Plaintiff also claims that he did not engage in communication with other managers. As evidence, he points to over five (5) months of the manager's log book, in which Plaintiff did not have one single entry. See Rutenberg Dep. at 159-161. Plaintiff also points out that he only attended two (2) of the weekly "Manager Meetings" held at the restaurant, and instead would work the line as a cook while such meetings were held. See Rutenberg Dep. at 202. However, Defendant responds that Plaintiff testified that he had access to the manager's log book and wrote in it if he had something to say, but that Plaintiff would usually communicate his concerns to the general manager orally. See Rutenberg Dep. at 99-100. With regard to his non-attendance at the Manager Meetings, Defendant responds that the fact that Plaintiff felt his duties in the back of the house were more important than attending the meetings did not make him any less of a manager. See DE 43 at 5.

Based upon the conflicting evidence and arguments presented by the parties, as outlined above, the Court cannot conclude as a matter of law whether Plaintiff's management duties were less important than his non-exempt duties.

**Exercise of Discretion, Freedom from Supervision**

Similarly, the evidence presented by Plaintiff and Defendant conflicts regarding the amount of discretion exercised by Plaintiff and his freedom from supervision. Defendant asserts that, because the assistant kitchen manager and the kitchen manager were rarely scheduled to work the same shift, the assistant kitchen manager operated with little or no direct supervision and, essentially, had the same duties and responsibilities as the kitchen manager. See Marouf Dep. at 30 (Q: When he was working, what did you observe him doing? A: Administrate the kitchen. He was an administrator. Running the kitchen. Making sure things are going well and the employees in the kitchen are doing their job. Getting the food out on time and the quality and procedures is done right.)

Defendant presents evidence that it is not necessary for one employee to be assigned to each line cook station for the back of the house to function properly and that a single employee can work more than one of the line cook stations at the same time. See Marouf Aff., DE 30-8 at ¶¶11-12. Defendant maintains that Plaintiff's decision to work on one of the line cook stations for a period of time is another example of Plaintiff exercising his discretion regarding the most efficient manner of operating the back of the house. DE 29 at 5. See Rutenberg Dep. at 104 (Q: Okay. Did you have any other duties and responsibilities that you were supposed to be doing during that time? A: Yeah. Making sure the kitchen ran, which was work the station.).

Plaintiff, in contrast, argues that Defendant's characterization that Plaintiff "elected" to work at a line cook station is incorrect and unsupported by the evidence. Rather, Plaintiff claims he had no choice but to work a line station during his shifts because the kitchen manager consistently scheduled Plaintiff's shift under-staffed, which dictated Plaintiff's duty to work at a

particular line station.  See Rutenberg Dep. at 176 (Q: So you think Ira should have been scheduled for more of the busy shifts?  A: No, I think it should have been divided up.  You can't cut all the labor out of one and keep the other the same.  That's basically what happened.  All the cuts to save labor came out of the night crew.  Never out of the day crew.).

After reviewing the evidence and arguments presented by the parties, the Court concludes that questions of fact exist as to the Plaintiff's freedom from supervision and ability to exercise discretion.

**Relationship Between Salaries**

The final factor involves a comparison of Plaintiff's salary with the wages paid to other non-exempt employees.  Here, the evidence suggests that Plaintiff received significantly greater compensation than non-exempt employees, on both an hourly and weekly take home basis.  See Marouf Aff. at ¶¶ 15-16.  Unlike non-management employees, Plaintiff received health insurance, paid vacation, complimentary food, and complimentary alcohol.  See Marouf Aff. at ¶¶ 22-24; Rutenberg Dep. at 142.  Further, Plaintiff was eligible for, and in fact received, quarterly bonuses, based on meeting benchmarks for sales, costs of goods and labor costs.  See Marouf Aff. at ¶¶ 17-21.  The bonus program was not available to other non-management employees.  See Marouf Aff. at ¶ 18.  Bonuses are "common for executive employees in the corporate world," and they are a hallmark of executive compensation.  Kastor v. Sam's Wholesale Club, 131 F. Supp. 2d 862, 869 (N.D. Tex 2001); see also Mims v. Starbucks Corp., 2007 WL 10369 at *8 (S.D. Tex. 2007).

After reviewing the summary judgment motions and attached exhibits, the Court concludes that factual questions exist with regard to whether Plaintiff engaged in management as

9

his primary duty. In evaluating the factors for determining Plaintiff's "primary duties," as to the executive exemption, lingering questions of fact remain. Thus, a jury question is presented. Verbraeken, 881 F.2d at 1045. Accordingly, the parties' cross-motions for summary judgment must be denied.

**Conclusion**

Based on the foregoing, there are genuine issues of material fact precluding summary judgment in favor of either party as to Plaintiff's claim for overtime compensation under the Fair Labor Standards Act, 29 U.S.C. § 216(b), as alleged in the one-count Complaint. Accordingly, it is hereby

**ORDERED AND ADJUDGED** as follows:

(1) Defendant's Motion for Summary Judgment (DE 27) is **DENIED**.

(2) Plaintiff 's Motion for Summary Judgment (DE 31) is **DENIED**.

(3) Defendant's Motion to Strike, or, in the Alternative, Notice of Objection to the Affidavit of Eric Rutenberg (DE 37) is **DENIED AS MOOT.**

(4) Defendant's Motion to Strike, or, in the Alternative, Notice of Objection to the Affidavit of Bobby Skinner (DE 38) is **DENIED AS MOOT.**

(5) Defendant's Motion to Strike Defendant's Reply to Plaintiff's Concise Statement of Facts in Opposition to Summary Judgment (DE 47) is **DENIED AS MOOT.**

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 8th day of January, 2010.

_____
KENNETH A. MARRA
United States District Court

Copies furnished to:
all counsel of record