UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.:   09-CV-80409-Marra-Johnson

ERIC RUTENBERG, on his own behalf and
others similarly situated,

      Plaintiff,
v.

BOYNTON CAROLINA ALE HOUSE, LLC,
a Florida Limited Liability Company,
d/b/a CAROLINA ALE HOUSE,
LM RESTAURANTS, INC., a Foreign Corporation,

      Defendants.
_____/

**DEFENDANT, BOYNTON CAROLINA ALE HOUSE, LLC'S,
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW
OR, IN THE ALTERNATIVE, MOTION FOR NEW TRIAL**

      Defendant, BOYNTON CAROLINA ALE HOUSE, LLC ("Carolina Ale House"), by and through its undersigned counsel and pursuant to Federal Rules of Civil Procedure 50 and 59, moves for entry of a judgment as a matter of law or, in the alternative, for a new trial, and in support states:

      1.     On February 11, 2010, following a two-day trial, the jury returned a verdict for Plaintiff, ERIC RUTENBERG, on his single claim seeking compensation for unpaid overtime. (D.E. 67.)

      2.     Pursuant to Rules 50 and 59, the Carolina Ale House moves for judgment as a matter of law or, in the alternative, for a new trial because the jury's verdict was not supported by the evidence.

**MEMORANDUM OF LAW**

**A.  Introduction**

      3.     Under Rule 50(b), judgment as a matter of law for the defendant is due when there is insufficient evidence to prove an element of the claim, which means that no reasonable jury could have reached a verdict for the plaintiff on that claim. Cleveland v. Home Shopping Network, Inc., 369 F.3d 1189, 1192-93 (11th Cir. 2004); see Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) ("The moving party is entitled to a judgment as a matter of law [where] the nonmoving party has

failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." (internal quotation marks omitted)); Bogle v. Orange County Bd. of County Comm'rs, 162 F.3d 653, 659 (11th Cir. 1998) ("[I]n order to survive a defendant's motion for judgment as a matter of law . . . the plaintiff must present evidence that would permit a reasonable jury to find in the plaintiff's favor on each and every element of the claim.").

4. Under this standard, "[a] district court should grant judgment as a matter of law when the plaintiff presents no legally sufficient evidentiary basis for a reasonable jury to find for him on a material element of his cause of action." Pickett v. Tyson Fresh Meats, Inc., 420 F.3d 1272, 1279 (11th Cir. 2005) (citation omitted).

5. Alternatively, under Rule 59, "a new trial may be granted to all or any of the parties and on all or part of the issues . . . in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States. . . ." The Supreme Court has held that a motion for a new trial may rest, among other things, on the fact that "the verdict is against the weight of the evidence." Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 253 (1940).

6. Under either analysis, the Carolina Ale House is entitled to relief because there was no legally sufficient evidentiary basis for the jury to find that Plaintiff was not employed in a bona fide executive capacity.

## B. Plaintiff's Flawed "Dumping Ground" Theory

7. At trial, Plaintiff argued that the Assistant Kitchen Manager position was not an exempt "executive" position because it functioned as a "dumping ground" for wage-earner tasks. This theory fails for at least two reasons. First, the undisputed evidence established that the higher-level executive, the Kitchen Manager, worked more hours than Plaintiff. Absolutely no evidence showed that the Kitchen Manager transferred any specific tasks (menial or otherwise) to the Plaintiff. To the contrary, the Plaintiff's position at trial was that the Kitchen Manager retained too much responsibility.

8. Second, the undisputed evidence showed that the only criticism the Plaintiff received with respect to his duties as the Assistant Kitchen Manager involved his **executive-level**

responsibilities. In the September 19, 2008, memorandum from Eady to Plaintiff (admitted as Defendant's Exhibit 11), Eady limited his comments to the Plaintiff's executive-level failures in "not stepp[ing] up as a leader" and "not guiding and leading the staff." No evidence showed that the Plaintiff was ever criticized for excessive absences, low hours, low productivity, poor cooking, or other factors associated with a "dumping ground" theory. The only evidence related to Plaintiff's performance in a management capacity.

### C. It's the Capacity of the Position, Not the Activity of the Employee

9. All the evidence presented at trial, including the testimony of Robert Skinner, Joe Marouf, Ira Eady, the members of the kitchen staff, and the Plaintiff's own testimony, demonstrated that Plaintiff was employed in an executive **capacity**. In response to this evidence, Plaintiff merely argued that he personally failed to engage in some of the **activities** that the position of Assistant Kitchen Manager required. For example, Plaintiff emphasized that the Carolina Ale House only produced two written disciplinary forms signed by Plaintiff during his eleven months of employment. However, based upon the "capacity" language of the exemption, the relevant inquiry is not the number of disciplinary forms Plaintiff signed, but whether his position as Assistant Kitchen Manager included the executive **capacity** to issue such disciplinary forms. Contrary to Plaintiff's legal position at trial, the exemption analysis applies to the authority of the **position** and not to Plaintiff's particular performance during a limited period. See Vezina v. Jewish Community Center, 1994 U.S. Dist. LEXIS 19024 (E.D. Mich. Sept. 23, 1994). The evidence at trial (including the discipline forms themselves and Plaintiff's decision to send Darren Best home before the end of Mr. Best's shift) confirmed that the **position** of Assistant Kitchen Manager granted Plaintiff the managerial authority to act. As a result, given the undisputed evidence regarding the authority of the Assistant Kitchen Manager position and Plaintiff's assumption of such authority (at least occasionally), Plaintiff's evidence that he failed to act as consistently as the position allowed does **not** alter the position's exempt status.

10. Moreover, adopting Plaintiff's individualized focus leads to an absurd application of the FLSA. According to the Plaintiff legal interpretation, if the newly-hired kitchen staff were all excellent workers who were never disciplined, enjoyed longevity at their positions, and needed little

supervision during the first year of operation, the Carolina Ale House would always be in peril of failing to establish that Assistant Kitchen Managers (**and** Kitchen Managers as well) were executive-level positions. That is, exceptional staff performance in a single instance would reduce the number of hours devoted to supervisory tasks and increase the evidentiary burden on the employer at that location despite uniformity in the managerial responsibility of Assistant Kitchen Managers on a company-wide basis. The Court should reject the Plaintiff's effort to change the focus of the FSLA from the capacity of the position to an isolated experience.

### D.  Cooking Like an Executive

11. While Plaintiff presented evidence that he devoted substantial time to cooking, it was undisputed that his duties as Assistant Kitchen Manager required him to engage in various executive-level cooking functions which non-executive employees were not allowed to perform. Joe Marouf provided an undisputed account of the need for consistency and control with respect to the preparation of customer favorites like salad dressings, sauces, and wing toppings. The testimony also confirmed the need to control costs through management-level employees portioning high-end products like steaks and fish. Both Plaintiff and Robert Skinner confirmed this specific division of labor. As a result, the undisputed evidence showed that these "cooking" functions were purely executive responsibilities that non-executives never performed. Even the Plaintiff's use of the pejorative term "glorified cook" emphasizes his own recognition of the undisputed **distinction** developed at trial between a non-executive "cook" and an executive-level "glorified cook" whose "glorified" position (i.e., elevated over a mere cook) gave him the capacity to engage in specific cooking activities that only those employed as executives -- the Kitchen Manager and the Assistant Kitchen Manager -- were authorized to perform.

### E.  Always In Charge of the Cooks Below Him

12. Plaintiff, Robert Skinner, Joe Marouf, Ira Eady, and the members of the kitchen staff all confirmed that regardless of the "merely-a-cook" argument raised at trial, Plaintiff remained ultimately responsible for and in charge of all the cooks and staff on duty with him in the kitchen. While on duty, Plaintiff (and no one else) was required to exercise discretion and use management authority in addressing problems, sending cooks home, disciplining his subordinates, accepting

goods on behalf of the restaurant, confirming the accuracy of purchases, and generally ensuring that the kitchen operated in a safe and efficient manner. The federal regulations contemplate that certain exempt job categories, like an Assistant Kitchen Manager, will require employees to engage in concurrent non-exempt duties. See 29 C.F.R. § 541.106. Contrary to the Plaintiff's argument to the jury, the performance of non-exempt duties does not transform an exempt job category into that of a non-executive. Since all the evidence confirmed that Plaintiff remained in charge of the kitchen even when he was cooking, there was no evidentiary basis to characterize him as a non-executive.

### F. The Compensation Gap

13. Even Plaintiff's comparisons between the compensation of the Assistant Kitchen Manager and the kitchen staff established Plaintiff's executive status. The evidence showed the Kitchen Manager (Ira Eady) received a salary of $47,000 and the Assistant Kitchen Manager (Plaintiff) received a salary of $40,000. Plaintiff also showed that the very highest hourly wage for a cook was approximately $11 per hour, resulting in annualized compensation for a cook of only $22,280, assuming the cook worked 52 consecutive 40-hour[1] weeks during the year. The Plaintiff's comparison shows that Plaintiff's compensation was essentially $20,000 more (50% more) than the amount paid to the typical non-executive cook but only $7,000 less (15% more) than the executive-level Kitchen Manager. Moreover, the evidence confirmed that the Assistant Kitchen Manager was paid comparably to the Kitchen Manager because the responsibilities of their respective positions were nearly identical. In fact, the Assistant Kitchen Manager needed no additional training or qualifications before being elevated to the higher management position

14. In addition to substantially higher annual base compensation, the Assistant Kitchen Manager position also received management level benefits, including health insurance, bonuses, paid vacation, and complimentary alcoholic beverages. The undisputed evidence established no similar compensation paid to any of the remaining members of the kitchen staff.

---

[1] Significantly, the evidence showed that the kitchen schedule was designed to avoid overtime hours, and Plaintiff's own testimony confirmed that keeping labor costs low was a primary concern.

Rutenberg v. Boynton Carolina Ale House, LLC
Case No.: 09-CV-80409

### G. Conclusion

15. The undisputed evidence at trial conclusively established each of the four elements of the executive exemption. The Plaintiff agrees he was compensated on a salary basis of at least $455.00 per week. Other than the misguided "glorified cook" argument, all of the evidence confirmed that the position of Assistant Kitchen Manager included the primary duty of managing the kitchen and directing the kitchen staff, including the prep girl, fry cook, saute cook, grill/flat-top cook, and window person. Additionally, all the witnesses, including the Plaintiff and Mr. Skinner, confirmed that the position of Assistant Kitchen Manager gave Plaintiff the capacity to provide suggestions and recommendations as to the hiring, firing, advancement, promotion, and change of status of other employees. Both the Kitchen Manager (Ira Eady) and the Assistant Bar Manager (Robert Skinner) confirmed that these were features of the Assistant Kitchen Manger position. While Plaintiff claims he did not interview often, it is undisputed that, unlike a cook, Plaintiff interviewed a job applicant. The testimony also confirmed that Plaintiff **believed** the position of Assistant Kitchen Manager included the authority to influence personnel decisions. It is undisputed that Plaintiff took it upon himself to make comments to Eady and to Skinner about subordinate employees. Finally, the evidence confirmed that even if Plaintiff's personal views were not always shared by others in management, Plaintiff's position as the Assistant Kitchen Manager included the **authority** to make himself heard and to participate in the shaping of personnel decisions. This undisputed authority was the subject of the September 18, 2008, memorandum (Defendant's Exhibit 11), which encouraged Plaintiff to guide and lead the subordinate workers on his team and confirmed Plaintiff's role as a supervisor of the kitchen staff.

16. The Carolina Ale House submits that the undisputed evidence conclusively established Plaintiff was employed as a bona fide executive **capacity** and that any contrary verdict is clearly against the weight of the evidence. Accordingly, Carolina Ale House requests judgment as a matter of law or, alternatively, entry of an order granting a new trial.

**WHEREFORE**, Defendant, CAROLINA ALE HOUSE, LLC, respectfully requests entry of a judgment in its favor as a matter of law or, in the alternative, an order granting a new trial.

Rutenberg v. Boynton Carolina Ale House, LLC
Case No.: 09-CV-80409

# CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 18th day of February, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

    /s/ Hudson C. Gill
JEFFREY L. HOCHMAN
Florida Bar Number 902098
HUDSON C. GILL
Florida Bar Number 15274
JOHNSON, ANSELMO, MURDOCH,
BURKE, PIPER & HOCMAN, P.A.
2455 East Sunrise Blvd., 10th Floor
Fort Lauderdale, FL 33304
(954) 463-0100 (telephone)
(954) 463-2444 (facsimile)
Attorneys for BOYNTON CAROLINA ALE HOUSE, LLC

Rutenberg v. Boynton Carolina Ale House, LLC
Case No.: 09-CV-80409

## SERVICE LIST
### Eric Rutenberg v. Boynton Carolina Ale House, LLC
### Case No.: 09-CV-80409-Marra-Johnson
### United States District Court, Southern District of Florida

Keith M. Stern, Esquire
SHAVITZ LAW GROUP, P.A.
1515 South Federal Highway, Suite 404
Boca Raton, Florida 33432
Telephone: 561-447-8888
Facsimile: 561-447-8831
Attorney for **Plaintiff**

Jeffrey L. Hochman, Esquire
hochman@jambg.com
Hudson C. Gill, Esquire
hgill@jambg.com
JOHNSON, ANSELMO, MURDOCH,
  BURKE, PIPER & HOCHMAN
2455 East Sunrise Blvd., Suite 1000
Fort Lauderdale, FL 33304
Telephone: (954) 463-0100
(954) 463-2444 (facsimile)
Attorneys for **Defendant**

Beth-Ann E. Krimsky, Esq.
Christine Nestor, Esq.
RUDEN, McCLOSKY, SMITH,
SCHUSTER & RUSSELL, P.A.
200 E. Broward Blvd., 15th Floor
P.O. Box 1900
Fort Lauderdale, FL 33302
Telephone: 954-527-2427
Facsimile: 954-333-4027
Attorneys for **Defendant LM Restaurants, Inc.**